**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KAREN NICHELSON**<br>                          **Plaintiff,**<br><br>       **v.**<br><br><br>**SOUTHEASTERN PENNSYLVANIA**<br>**TRANSPORTATION AUTHORITY**<br>                          **Defendant.** | **CIVIL ACTION NO.  21-1860** |

**MEMORANDUM OPINION**

Rufe, J.                                                                                    **March 20, 2023**

Plaintiff Karen Nichelson brings this lawsuit against her employer, Defendant

Southeastern Pennsylvania Transportation Authority ("SEPTA"), asserting claims of retaliation

under both Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act.

SEPTA now moves for summary judgment on both counts. For the reasons discussed below, the

motion will be granted in part and denied in part.

## I.      BACKGROUND

Nichelson is an African American woman who was hired by SEPTA as a bus operator in

January 2001.[1] Nichelson became a Transportation Manager in 2008, which is her current

position.[2] As a Transportation Manager, Nichelson's responsibilities include maintaining the

---

[1] Parties' Statement of Stipulated Material Facts ("SSMF") [Doc. No. 16-1] ¶ 1.

[2] SSMF [Doc. No. 16-1] ¶ 1.

schedules of bus operators, investigating accidents and/or incidents that occur, addressing any concerns raised by bus operators, and ensuring compliance with SEPTA's rules.[3]

In January and February 2019, Nichelson was involved in separate incidents with two SEPTA employees, both of whom claimed that Nichelson used "abusive language" when speaking to them.[4] The employees were Caucasian and Hispanic.[5] Assistant Director Michelle Norman and Director Mike Lyles issued warnings to Nichelson for both incidents.[6] On March 15, 2019, Nichelson filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that her Caucasian and Hispanic colleagues were treated more favorably than Nichelson (the "March 2019 EEOC Charge").[7] The "March 2019 EEOC Charge was investigated by SEPTA's EEO [Department] and completed."[8]

Ten months later, on January 18, 2020, Nichelson was working the Grant Avenue to Trenton, New Jersey zone and reported to Norman during her shift.[9] Norman made a radio announcement instructing Transportation Managers to come back to Philadelphia due to an

---

[3] SSMF [Doc. No. 16-1] ¶ 2.

[4] Plaintiff's Statement of Additional Facts ("Pl.'s SOAF") Ex. P-13 [Doc. No. 18-5].

[5] Pl.'s SOAF [Doc. No. 18-1] ¶ 11; Def.'s Resp. to Pl.'s SOAF [Doc. No. 19] ¶ 11.

[6] Pl.'s SOAF [Doc. No. 18-1] ¶ 11. SEPTA does not dispute this, but avers that the written warnings were reduced to a "Performance Discussion" by Senior Director Brian Naldzin. Def.'s Resp. to Pl.'s SOAF [Doc. No. 19] ¶ 11.

[7] Pl.'s SOAF [Doc. No. 18-1] ¶ 10; Def.'s Resp. to Pl.'s SOAF [Doc. No. 19] ¶ 10.

[8] Pl.'s SOAF [Doc. No. 18-1] ¶ 12; Def.'s Resp. to Pl.'s SOAF [Doc. No. 19] ¶ 12. The parties do not clarify the exact outcome of the investigation.

[9] Pl.'s SOAF [Doc. No. 18-1] ¶ 23; Def.'s Resp. to Pl.'s SOAF [Doc. No. 19] ¶ 23.

impeding storm.[10] Nichelson acknowledged the announcement.[11] Nichelson then called Norman

from her cellphone and asked why she had to return to Philadelphia, but the call became

disconnected.[12] Norman called Nichelson back on the radio, which Nichelson acknowledged,

and Norman told her to make herself "10-2," meaning that she was done working for the day.[13]

Nichelson was sent home without two hours of pay.[14]

On January 27, 2020, Nichelson informed Leon Wakefield, who was "backfilling" as

Assistant Director that day, that she was leaving work early for an appointment.[15] Nichelson

claims that she did not see Assistant Director William Thornton that day.[16] As the backfill

Assistant Director, Wakefield had the same authority over Nichelson as other Assistant

Directors.[17] When Thornton learned that Nichelson planned to leave early, he phoned her and

informed her that she would need to seek his approval.[18] Nichelson claims that she simply had to

---

[10] Pl.'s SOAF [Doc. No. 18-1] ¶ 24; Def.'s Resp. to Pl.'s SOAF [Doc. No. 19] ¶ 24.

[11] Pl.'s SOAF [Doc. No. 18-1] ¶ 26; Def.'s Resp. to Pl.'s SOAF [Doc. No. 19] ¶ 26.

[12] Pl.'s SOAF [Doc. No. 18-1] ¶ 26; Def.'s Resp. to Pl.'s SOAF [Doc. No. 19] ¶ 26. The parties dispute the manner by which the call became disconnected.

[13] Pl.'s SOAF [Doc. No. 18-1] ¶ 26; Def.'s Resp. Pl.'s SOAF [Doc. No. 18-1] ¶ 26.

[14] Pl.'s SOAF [Doc. No. 18-1] ¶ 27. SEPTA does not dispute that Nichelson was sent home without pay, but avers that she was eventually compensated for the two hours of lost pay. Def.'s Resp. Pl.'s SOAF [Doc. No. 18-1] ¶ 27.

[15] Pl.'s SOAF [Doc. No. 18-1] ¶ 44. SEPTA does not dispute this for the purposes of this Motion. Def.'s Resp. to Pl.'s SOAF [Doc. No. 19] ¶ 44.

[16] Pl.'s SOAF [Doc. No. 18-1] ¶ 44. SEPTA avers that Thornton testified that he worked for a portion of the day and left by the time Nichelson spoke with Wakefield. Def.'s Resp. to Pl.'s SOAF [Doc. No. 19] ¶ 44.

[17] Pl.'s SOAF [Doc. No. 18-1] ¶ 45. SEPTA does not dispute this, but avers that Thornton testified that Wakefield reported to him. Def.'s Resp. to Pl.'s SOAF [Doc. No. 19] ¶ 45.

[18] Pl.'s SOAF [Doc. No. 18-1] ¶ 47. SEPTA does not dispute this for purposes of this Motion. Def.'s Resp. to Pl.'s SOAF [Doc. No. 19] ¶ 47.

notify the Assistant Director *on duty* whenever she wished to leave early and that Thornton was

not on duty that day.[19]

Based on the January 18, 2020 incident, Norman issued Nichelson a written warning on

January 29, 2020 (the "January 2020 Warning"), which stated that Nichelson violated Section

IV.B of SEPTA Policy No. E21 (engaging in behavior or conduct that is inappropriate and

unacceptable in SEPTA's workplace).[20] Norman elaborated that "You stated, 'I don't know what

your problem is with me? But, I'm sick of you [talking] to me any way that you want. I'm in my

zone and I can go wherever I want!' I tried to interject and inform you of why I made the

announcement, you ended the abruptly mid-conversation by hanging up the phone."[21] Norman

asked Nichelson to sign the January 2020 Warning, but she refused.[22] Nichelson claims that

Norman said to her in response, "It doesn't matter if you sign it or not, I'm putting them in your

file. I told you that you can't win this."[23] Nichelson appealed the January 2020 Warning through

SEPTA's SAM Disciplinary and Appeal Policy.[24] The appeal hearing was held on February 28,

2020, with Norman, Nichelson, and Employee Relations Manager Laila Burns present.[25]

Nichelson asserts that per SEPTA's policy, Norman should not have handled the appeal since

---

[19] Pl.'s SOAF [Doc. No. 18-1] ¶¶ 46-47. SEPTA avers that Nichelson's contention that she simply had to notify the Assistant Director on duty is her opinion and is not supported by testimony other than her own. Def.'s Resp. to Pl.'s SOAF [Doc. No. 19] ¶¶ 46-47.

[20] Pl.'s SOAF Ex. P-6 [Doc. No. 18-5].

[21] Pl.'s SOAF Ex. P-6 [Doc. No. 18-5].

[22] Pl.'s SOAF [Doc. No. 18-1] ¶¶ 28, 30; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶¶ 28, 30.

[23] Pl.'s SOAF [Doc. No. 18-1] ¶ 31. SEPTA does not dispute this for purposes of this Motion, but does not believe this "fact" is material for purposes of summary judgment. Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 31.

[24] Pl.'s SOAF [Doc. No. 18-1] ¶ 32; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 32.

[25] Pl.'s SOAF [Doc. No. 18-1] ¶ 35. SEPTA does not dispute this for purposes of this Motion. Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 35.

she also issued the January 2020 Warning.[26] On March 7, 2020, Norman upheld the January 2020 Warning.[27]

Nichelson claims that she was "skipped overtime for months" after the January 2020 Warning.[28] Nichelson also contends that she never received "Years of Service" certificates, which are awarded to employees in five-year increments, for her five-year, ten-year, and fifteen-year anniversaries.[29]At the end of January 2020, Nichelson approached Lyles about the status of her certificates, since her twenty-year service certificate was coming due.[30] Nichelson claims that Lyles replied, "You will get them; that's if I don't fire you first."[31] She eventually received her certificates in 2021.[32]

While Nichelson's disciplinary proceedings were pending, she filed a complaint with SEPTA's EEO Department on February 13, 2020 (the "February 2020 EEO Complaint"), alleging that Norman issued the January 2020 Warning in retaliation for the March 2019 EEOC Charge.[33] Nichelson included a complaint that Thornton denied her overtime after the January

---

[26] Pl.'s SOAF [Doc. No. 18-1] ¶ 33. SEPTA does not dispute this for purposes of this Motion, but argues that SEPTA's policy is silent as to which supervisor should handle the appeal of an employee's discipline. *See* Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 33.

[27] Pl.'s SOAF [Doc. No. 18-1] ¶ 37; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 37.

[28] Pl.'s SOAF [Doc. No. 18-1] ¶ 39. SEPTA disputes this, arguing that the record indicates that Nichelson did receive overtime for the week ending January 25, 2020 and afterward. *See* Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 39.

[29] Pl.'s SOAF [Doc. No. 18-1] ¶ 41; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 41.

[30] Pl.'s SOAF [Doc. No. 18-1] ¶ 42; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 42.

[31] Pl.'s SOAF [Doc. No. 18-1] ¶ 42. SEPTA does not dispute this for purposes of this Motion. *See* Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 42.

[32] Pl.'s SOAF [Doc. No. 18-1] ¶ 43. SEPTA does not dispute this, but argues that this is not a "fact" that would preclude summary judgment. Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 43.

[33] Pl.'s SOAF Ex. P-7 [Doc. No. 18-5].

18, 2020 incident.[34] The February 2020 EEO Complaint was assigned to Burns.[35] Although Burns contacted Nichelson for an interview, Nichelson testified that she did not schedule an interview with her because "I did not trust her at that point," as she was present at the February 28, 2020 hearing.[36] Burns interviewed Norman about the complaint.[37] On May 19, 2020, Burns issued a letter to Nichelson indicating that she was closing the complaint because she was unable to schedule an interview with her.[38] However, Burns provided her with the opportunity to reopen her complaint.[39]

Between March 2020 and July 2020, Nichelson claims that she suffered a series of adverse employment actions. For example, Nichelson claims that she was no longer invited to birthday parties, retirement parties, and other social events by Norman starting in March 2020.[40] Nichelson also claims she was mistreated by Thornton. On March 1, 2020, Nichelson claims that Thornton yelled at her to "drop down" and do a job outside her work zone, even though another supervisor accepted the job.[41] On April 27, 2020, when Nichelson asked Thornton for Personal Protective Equipment, she claims that he told her "I don't know where the supplies are" and

---

[34] Pl.'s SOAF Ex. P-7 [Doc. No. 18-5]. While Thornton is not alleged to be involved in the January 18, 2020 incident, Nichelson alleges that he stopped assigning her overtime after that event.

[35] Pl.'s SOAF [Doc. No. 18-1] ¶ 15; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 15.

[36] Pl.'s SOAF [Doc. No. 18-1] ¶¶ 15-16; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶¶ 15-16; Pl.'s SOAF Ex. A ("Nichelson Dep.") [Doc. No. 18-5] at 66:12-67:16.

[37] Pl.'s SOAF [Doc. No. 18-1] ¶ 19; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 19.

[38] Pl.'s SOAF [Doc. No. 18-1] ¶ 17; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 17; Pl.'s SOAF Ex. P-10 [Doc. No. 18-5].

[39] Pl.'s SOAF Ex. P-10 [Doc. No. 18-5].

[40] Pl.'s SOAF [Doc. No. 18-1] ¶ 48; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 48.

[41] Pl.'s SOAF [Doc. No. 18-1] ¶ 49; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 49.

asked "Who are you going to call now to represent you? Folger is gone."[42] Folger was the Union Representative who used to represent Nichelson.[43] On May 13, 2020, Thornton omitted Nichelson's name when he publicly thanked several Transportation Managers for their service during the pandemic.[44] Finally, on July 17, 2020, Thornton instructed Nichelson to go to a particular zone for a job.[45] Nichelson questioned why she was instructed to go to that zone, and then called Senior Director Tom Marcucci complaining about ongoing retaliatory harassment by Thornton and other supervisors.[46] Nichelson claims that Thornton then called her and "berated" her for calling Marcucci.[47]

On August 26, 2020, Nichelson filed an amended EEOC Charge, asserting that she had been subjected to retaliation and a retaliatory hostile work environment (the "August 2020 Amended EEOC Charge").[48] After receiving a Right to Sue Notice, Nichelson timely filed this action against SEPTA on April 21, 2021, asserting claims of retaliation under both Title VII and the PHRA.

---

[42] Pl.'s SOAF [Doc. No. 18-1] ¶ 51. SEPTA avers that Nichelson testified that Thornton told her that he did not know where the PPE supplies were located. Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 51.

[43] Pl.'s SOAF [Doc. No. 18-1] ¶ 51; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 51.

[44] Pl.'s SOAF [Doc. No. 18-1] ¶ 52; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 52. Thornton testified that he later apologized for missing her name. Pl.'s SOAF Ex. E ("Thornton Dep.") [Doc. No. 18-3] at 21:14-24.

[45] Pl.'s SOAF [Doc. No. 18-1] ¶ 53; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 53.

[46] Pl.'s SOAF [Doc. No. 18-1] ¶ 54. SEPTA does not dispute that Nichelson called Marcucci and complained about Thornton, however, it avers that her statement that she informed Marcucci about ongoing retaliatory harassment is her own opinion and argument. Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 54.

[47] Pl.'s SOAF [Doc. No. 18-1] ¶ 54. Similarly, SEPTA does not dispute that Thornton called Nichelson, but avers that her statement that Thornton "berated" her is her own opinion and argument. Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 54.

[48] Pl.'s SOAF Ex. P-19 [Doc. No. 18-5].

On June 9, 2021, Marcucci received a complaint through SEPTA's Customer Service system that an employee used profanity towards an unidentified pedestrian.[49] Assistant Director Kevin O'Connell forwarded the ticket to Nichelson, who acknowledged there was an incident but denied that she used profanity.[50] O'Connell called Nichelson asking about the allegations of using a racial slur, asking her to send him a response in writing.[51] Nichelson drafted an email confirming that she did not use profanity, but it was never sent to O'Connell (Nichelson claims that she attempted to send the email but was having problems with her iPad).[52] On June 25, 2021, O'Connell met with Nichelson and gave her a notice of written warning (the "June 2021 Warning").[53] Nichelson refused to sign it.[54] Nichelson claims that she never met with O'Connell prior to the issuance of the warning to challenge the allegations.[55]

On June 27, 2021, Nichelson demanded that SEPTA remove the written warning from her file, or she would demand a determination hearing.[56] Nichelson did not receive a reply and followed up again on September 21 and September 22, 2021.[57] SEPTA claims that the warning

---

[49] Pl.'s SOAF [Doc. No. 18-1] ¶ 55; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 55.

[50] Pl.'s SOAF [Doc. No. 18-1] ¶¶ 56, 57, 58; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶¶ 56, 57, 58.

[51] Pl.'s SOAF [Doc. No. 18-1] ¶ 58; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 58; *see also* Pl.'s SOAF Ex. P-G ("O'Connell Dep.") [Doc. No. 18-4] at 28:21-30:2.

[52] Pl.'s SOAF [Doc. No. 18-1] ¶¶ 58-59; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶¶ 58-59.

[53] Pl.'s SOAF [Doc. No. 18-1] ¶ 61; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 61.

[54] Pl.'s SOAF [Doc. No. 18-1] ¶ 61; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 61.

[55] Pl.'s SOAF [Doc. No. 18-1] ¶ 62; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 62.

[56] Pl.'s SOAF [Doc. No. 18-1] ¶ 63; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 63.

[57] Pl.'s SOAF [Doc. No. 18-1] ¶¶ 66-68; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶¶ 66-68. Michael D'Agostino replied to Nichelson's September 21 email, stating that "You received a written warning that you refused to sign. Your refusal to do so was noted on the copy you received."[57] Pl.'s SOAF [Doc. No. 18-1] ¶ 67.

was ultimately rescinded on October 5, 2021.[58] Nichelson amended the complaint in this action

on October 28, 2021, after receiving a Right to Sue Notice from the EEOC for the June 25, 2021

disciplinary action by O'Connell.[59]

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted if there is

"no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."[60] "Only disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment."[61] When "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party," there is a "genuine" dispute over

material facts.[62] To evaluate a motion for summary judgment, it is necessary to "view the facts in

the light most favorable to the non-moving party" and draw "all reasonable inferences in that

party's favor."[63] It is improper for a court "to weigh the evidence or make credibility

determinations" as "these tasks are left to the fact-finder."[64] The non-moving party must support

its opposition to the motion by pointing to evidence in the record.[65] "If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted."[66]

---

[58] Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 68. Nichelson testified that she did not know the June 2021 Warning was rescinded. Nichelson Dep. [Doc. No. 18-3] at 51:1-52:21.

[59] Pl.'s SOAF [Doc. No. 18-1] ¶ 22; Def.'s Resp. Pl.'s SOAF [Doc. No. 19] ¶ 22.

[60] Fed. R. Civ. P. 56(a).

[61] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[62] *Id.*

[63] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).

[64] *Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citation omitted).

[65] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[66] *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

### III.    DISCUSSION

Nichelson claims that SEPTA retaliated against her after she engaged in the following protected activities: (1) filing the March 2019 EEOC Charge; (2) filing the February 2020 EEO Complaint; (3) filing the August 2020 Amended EEOC Charge; and (4) filing this instant action. Specifically, Nichelson asserts claims of retaliatory harassment from January 18, 2020 to October 2021, retaliatory disciplinary actions on January 18, 2020, January 29, 2020, March 7, 2020, and June 25, 2021, and retaliatory denial of overtime following the January 18, 2020 incident.

SEPTA does not dispute that Nichelson engaged in protected activities. Instead, SEPTA argues that it is entitled to summary judgment because Nichelson was not subjected to materially adverse actions. In the alternative, SEPTA argues that Nichelson cannot establish that a causal connection exists between the protected activities and the alleged adverse actions, and that SEPTA had legitimate reasons for the alleged adverse actions. SEPTA also asserts that Nichelson cannot establish a prima facie case of retaliatory harassment.

### A.  Retaliatory Disciplinary Actions and Denial of Overtime

#### a.  Prima Facie Case

To establish a prima facie case for retaliation under Title VII and the PHRA, a plaintiff must show that (1) she engaged in protected employee activity; (2) her employer took adverse action against her; and (3) a causal connection between her protected activity and her employer's adverse action.[67]

---

[67] *Daniels v. School Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (citations omitted).

Under the first prong, protected activities include not only filing of formal charges of discrimination, but also "informal protests of discriminatory employment practices, including making complaints to management."[68] Under the second prong, "the plaintiff 'must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"[69] Under the third prong, courts "consider 'a broad array of evidence' in determining whether a sufficient causal link exists [for a plaintiff] to survive a motion for summary judgment."[70] A plaintiff may rely on a temporal proximity between the protected activity and an employer's adverse action if it is "unusually suggestive."[71] "In the absence of such a close temporal proximity, we consider the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action."[72]

As an initial matter, there is a ten-month gap between the March 2019 EEOC Charge and the first alleged adverse action on January 18, 2020. While "there is no bright line rule as to what constitutes unduly suggestive temporal proximity," courts have held that periods shorter than ten

---

[68] *Id.* (quoting *Curay-Cramer v. Ursuline Acad. of Wilimington, Del., Inc*., 450 F.3d 130, 135 (3d Cir. 2006)).

[69] *Id.* at 195 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

[70] *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n,* 503 F.3d 217, 232 (3d Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 284 (3d Cir. 2000)).

[71] *Id.*

[72] *Daniels*, 776 F.3d at 196 (citations omitted).

months without more, cannot defeat summary judgment.[73] Critically, Nichelson does not claim

that she suffered *any* adverse actions between March 2019 and January 18, 2020. Accordingly,

the Court will grant SEPTA's motion for summary judgment as to Nichelson's claim that she

was retaliated against for the March 2019 EEOC Charge. The Court will therefore limit its

discussion to the incidents that occurred after Nichelson filed the February 2020 EEO Complaint.

Denial of overtime may constitute an adverse action, as "[l]ack of overtime opportunities

. . . is a form of reduction in compensation."[74] SEPTA argues that Nichelson cannot claim that

she was denied overtime, because she received a total of $18,959.14 in overtime in 2020.[75]

Nichelson argues that she had zero overtime hours for at least two weeks out of every month

from February 2020 to December 2020—previously, she had worked overtime every single

week.[76] For those same weeks, Nichelson points to evidence that four other Transportation

Managers received overtime and made between $3,639.47 to $8,261.78.[77] Given that other

Transportation Managers received overtime when Nichelson did not, a jury reasonably could

conclude that denial of overtime constitutes an adverse action in this case. However, as noted

above, Nichelson's potential recovery would be limited to denial of overtime after February 13,

2020, when she filed the February 2020 EEO Complaint.

---

[73] *LeBoon,* 503 F.3d at 233 (citations omitted) (holding that a gap of three months between the protected activity and the adverse employment action, without more, could not create an inference of causation and defeat summary judgment).

[74] *Albright v. City of Philadelphia*, 399 F.Supp.2d 575, 587 (E.D. Pa. 2005).

[75] Nichelson Dep. [Doc. No. 18-3] at 30:19-31:19; *see also* Pl.'s Sur-Reply Opp. Mot. Summ. J. Ex. P-29 [Doc. No. 20-1].

[76] Pl.'s Sur-Reply Opp. Mot. Summ. J. Ex. P-29 [Doc. No. 20-1].

[77] *Id.*

Written warnings may also constitute adverse employment actions, where the warning is part of a progressive disciplinary policy such that each previous infraction raises the penalty for a subsequent infraction, or issuing the warning was inconsistent with the employer's disciplinary scheme.[78] Nichelson incurred two disciplinary actions after the February 2020 EEO Complaint: (1) Norman denied her appeal of the January 2020 Warning;[79] and (2) O'Connell issued the June 2021 Warning.

SEPTA maintains that neither disciplinary action was accompanied by an adverse action and that the June 2021 Warning was ultimately rescinded. In response, Nichelson argues that these written warnings, which constitute disciplinary actions, are adverse actions, because they are considered in decisions regarding annual merit increases.[80] Nichelson also disputes SEPTA's handling of the appeals process for both warnings. For example, Norman handled the appeal of the January 2020 Warning, but Nichelson argues that per SEPTA's policy, Norman's supervisor should have handled the appeal.[81] Further, when Nichelson received the June 2021 Warning, she claims that SEPTA ignored her requests for a determination hearing. Nichelson also testified that she did not know that SEPTA rescinded the June 2021 Warning. Given that these disciplinary

---

[78] *Allen v. Nutrisystem, Inc.*, No. 11-4107, 2013 WL 1776440, at *6 n.6 (E.D. Pa. Apr. 25, 2013), *aff'd*, 546 F. App'x 98 (3d Cir. 2013) (citations omitted); *Henley v. Brandywine Hosp., LLC*, No. 18-4520, 2019 WL 3326041, at *11 (E.D. Pa. July 24, 2019).

[79] Since the January 2020 Warning was issued before the February 2020 EEO Complaint, the Court considers not the issuance of the warning itself, but Nichelson's appeal that was denied on March 7, 2020.

[80] Pl.'s SOAF Ex. P-4 [Doc. No. 18-5] at pages 5-6; Pl.'s Sur-Reply Opp. Mot. Summ. J. Ex. P-27 [Doc. No. 20-1] at page 2.

[81] Pl.'s SOAF [Doc. No. 18-1] ¶ 34. SEPTA does not dispute this for purposes of this Motion and does not believe that this "fact" is material for purposes of summary judgment. Def.'s Resp. to Pl.'s SOAF [Doc. No. 19] ¶ 34.

actions have employment-related consequences, a jury may conclude that they constitute adverse actions.

The Court next addresses the causation prong of Nichelson's prima facie case. "[C]ircumstantial evidence of a 'pattern of antagonism' following the protected conduct can . . . give rise to the inference" of retaliation.[82] Here, Nichelson has produced evidence of adverse actions and hostility as she continued to engage in protected activities from February 13, 2020 onward.[83] SEPTA argues that the supervisors in question, particularly Thornton and O'Connell, did not know about Nichelson's protected activities. However, Nichelson named Norman and Thornton in the February 2020 EEO Complaint, and Norman was even interviewed about the complaint. It is also plausible that O'Connell may have known about Nichelson's protected activities, though Nichelson does not point to any evidence on the record confirming this. Indeed, by the time O'Connell issued the June 2021 Warning, Nichelson had already submitted an EEO Complaint, an amended EEOC Charge, and filed a lawsuit in federal court. Accordingly, a jury could find that causation exists between the February 2020 EEO Complaint, the August 2020 Amended EEOC Charge, and this lawsuit, on one hand, and the disciplinary actions and denial of overtime, on the other. Therefore, causation is not a basis to grant SEPTA's motion for summary judgment.

---

[82] *Kachmar v. SunGard Data Syst., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (quoting *Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir.1993)).

[83] As noted above, Plaintiff cannot base her retaliation claims on the March 2019 EEOC Charge.

### b.  Existence of Legitimate, Non-Retaliatory Reasons

If the plaintiff establishes a prima facie case, the burden shifts to the employer to present a legitimate, non-retaliatory reason for having taken the adverse action.[84] SEPTA does not explain why Norman oversaw the appeal hearing for the January 2020 Warning, instead of her supervisor.[85] SEPTA only argues that the denial of Nichelson's appeal was justified, as she "was insubordinate and unprofessional in her interactions."[86] SEPTA also asserts that O'Connell issued the June 2021 Warning because he "asked Plaintiff to provide an explanation for the allegation that she called a pedestrian a racial slur and he did not receive one."[87] By Nichelson's own admission, she attempted to respond to O'Connell's request for further explanation, but her email was never sent to him. O'Connell issued the June 2021 Warning when he never heard back from Nichelson. While SEPTA did not grant Nichelson a determination hearing per her request, the June 2021 Warning was ultimately rescinded once Nichelson communicated the misunderstanding to her supervisors. Finally, with respect to Nichelson's overtime, SEPTA argues that she did receive overtime totaling about $18,959 in 2020, and thus cannot argue that she was denied overtime. Accordingly, SEPTA has articulated legitimate reasons for the disciplinary actions and denial of additional overtime.

---

[84] *Jones v. School Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999) (quoting *McDonald Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[85] As stated above, for purposes of this Motion, SEPTA does not dispute Nichelson's contention that the appeal should have been handled by Norman's supervisor. Def.'s Resp. to Pl.'s SOAF [Doc. No. 19] ¶ 34. However, SEPTA argues that its policy is silent as to which supervisor should handle the appeal of an employee's discipline. *Id.* at ¶ 33.

[86] Def.'s Reply Mem. L. Supp. Mot. Summ. J. [Doc. No. 19-1] at 21-22.

[87] *Id.* at 22.

### c. Pretext

If the employer presents a legitimate explanation for its actions, the burden shifts back to the plaintiff to demonstrate that "the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action."[88] Looking at the record as a whole, a jury could conclude that SEPTA's actions were a pretext for retaliation. After filing the February 2020 EEO Complaint and subsequent protected activities, Nichelson alleges mistreatment from supervisor Thornton and being isolated from social events. Although these incidents are not themselves actionable, they provide evidence that Nichelson was treated differently after filing the complaints. In addition, as discussed above, there is some evidence that SEPTA did not properly adjudicate Nichelson's appeals of her written warnings. This evidence supports an inference that retaliation may have been the real reason for the claimed adverse actions.

Accordingly, the Court will grant SEPTA's Motion for Summary Judgment as to claims of retaliation for the period before February 13, 2020, when Nichelson filed the February 2020 EEO Complaint, and will deny SEPTA's motion as to the retaliatory denial of overtime and disciplinary actions after February 13, 2020.

### B. Retaliatory Hostile Work Environment

Nichelson also pursues a theory of retaliatory hostile work environment, which is recognized in the Third Circuit.[89] To establish such a claim, the plaintiff must show that "(1) [S]he suffered intentional discrimination because of her protected activity; (2) the discrimination

---

[88] *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (quoting *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir.2006)).

[89] *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *overruled in part on other grounds by Burlington*, 548 U.S. at 53).

was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present."[90]

 "The inquiry into whether the discriminatory or retaliatory environment was 'severe or pervasive' recognizes that less severe isolated incidents which would not themselves rise to the level of retaliation may, when taken together as part of 'the overall scenario,' evidence retaliatory animus, and one severe incident may be enough to create a hostile work environment."[91] "The Third Circuit has yet to address the extent to which, if any, there is an overlap in analysis between the 'severe or pervasive' and 'materially adverse' requirements, or otherwise delineate 'the room in magnitude of harm' between the two requirements," but "there appears to be little practical difference between the two requirements."[92]

As explained above, the Court limits its discussion to events after the February 2020 EEO Complaint. First, Nichelson alleges mistreatment from her supervisor, Thornton. Specifically, she alleges that he assigned her to handle situations in other Transportation Managers' zones, berated her, failed to give her PPE when she requested it, and failed to include her name when thanking workers for their service during the pandemic.[93] Second, Nichelson maintains that she was excluded from social events outside of work starting in March 2020.

---

[90] *Komis v. Sec'y of United States Dep't of Lab.*, 918 F.3d 289, 293 (3d Cir. 2019) (quoting *Jensen*, 435 F.3d at 449).

[91] *Id.* at 293-94 (quoting *Jensen*, 435 F.2d at 450).

[92] *Fennell v. Comcast Cable Commc'ns Mgmt., LLC*, No. 19-4750, 2022 WL 4296690, at *23 (E.D. Pa. Sept. 16, 2022) (citation omitted).

[93] Nichelson also claims that Thornton was one of the Assistant Directors responsible for assigning overtime.

It is true that "Title VII does not set forth 'a general civility code for the American workplace.'"[94] Further, Nichelson does not contest that Thornton, as Nichelson's supervisor, is allowed to assign her to stations that he deems fit—even if there are others already assigned to those stations. However, Nichelson alleges a series of events from which a reasonable jury could conclude that she was subjected to retaliatory harassment, particularly in combination with the disciplinary actions and denial of overtime. Further, the Court notes that these actions appear to have come from supervisors, and not coworkers.[95] A jury may conclude that these "less severe isolated incidents, which would not themselves rise to the level of retaliation may, when taken together as part of the 'overall scenario,' evidence retaliatory animus."[96] Finally, for the reasons discussed above, the Court rejects SEPTA's argument that Nichelson cannot establish a causal connection between the protected activities and the alleged harassment.

## IV.    CONCLUSION

For the foregoing reasons, SEPTA's Motion for Summary Judgment is granted in part and denied in part. The Motion is granted as to the claims of retaliation for the period before February 13, 2020 and is denied in all other respects. An order follows.

---

[94] *Anselmo v. City of Phila.*, No. 18-5160, 2021 WL 308132, at *13 (E.D. Pa. Jan. 29, 2021) (quoting *Burlington*, 548 U.S. at 68).

[95] *See id.* at *16 (denying plaintiff's motion for summary judgment for retaliatory hostile work environment where the harassment was perpetrated by co-workers, not supervisors, and there was no evidence that the defendant knew of the harassment and failed to stop it).

[96] *Komis*, 918 F.3d at 293-94 (quoting *Jensen*, 435 F.2d at 450).